IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| REGINALD FERLANDUS JACKSON, § <br> TDCJ No. 02304291, § <br> § <br> Petitioner, § <br> § <br> V. § <br> § <br> ERIC GUERRERO, Director, § <br> Texas Department of Criminal Justice, § <br> Correctional Institutions Division, § <br> § <br> Respondent.[1] § | W-24-CV-00549-ADA |

## ORDER

Before the Court are Reginald Ferlandus Jackson's ("Petitioner") pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Eric Guerrero's Answer (ECF No. 16), and Petitioner's Reply (ECF No. 18). Having reviewed the record and pleadings submitted by both parties, the Court dismisses one of Petitioner's claims as procedurally defaulted and denies his remaining claims under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. Background

In October 2018, Petitioner was charged by indictment with murder. (ECF No.17-28 at 6-7.) On January 17, 2020, a jury convicted Petitioner of murder and sentenced him to thirty years imprisonment. *State v. Jackson*, No. 79562 (264th Dist. Ct., Bell Cnty., Tex. Jan. 17, 2020). (*Id.* at 112-14.) The following is a summary of the factual allegations against Petitioner:

> Appellant was indicted for "intentionally and knowingly caus[ing] the death of an individual, namely, Deandre Patrick Thomas, by shooting the said Deandre Patrick

---

[1] The previous named respondent in this action was Bobby Lumpkin. Eric Guerrero succeeded Lumpkin as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d) of the Federal Rules of Civil Procedure, Guerrero is automatically substituted as a party.

1

Thomas with a firearm" on or about August 18, 2018. It was undisputed at trial that appellant caused Thomas's death by shooting him multiple times with a .45 caliber handgun and that Thomas was unarmed. Prior to the shooting, appellant and Thomas had altercations at a club that included yelling and Thomas clapping his hands and pointing at appellant. Appellant left the club on separate occasions and individuals tried to calm him down in the club's parking lot, but he approached Thomas, who was right outside the club's front door at that time, and shot him multiple times at close range including after Thomas fell to the ground. After shooting Thomas, appellant walked away from the club and left the handgun along the route that he travelled on foot. Police officers located appellant shortly after the shooting and arrested him. The officers also located appellant's handgun.

The State's witnesses during the trial's guilt or innocence phase included eyewitnesses to the shooting, police officers who responded and investigated the shooting, forensic scientists, and the medical examiner who performed the autopsy and testified that gunshot wounds caused Thomas's death. The State's exhibits included the autopsy report that documented nine gunshot wounds, forensic reports, physical evidence, photographs, and video recordings from the club from two different cameras. The shooting was captured on one of the video recordings.

The defense theory was that appellant acted in self-defense, and appellant's witnesses were individuals who were at the club and appellant. In his testimony, appellant admitted that he shot Thomas nine times but testified that "fear took over" when Thomas's hand was in his pocket, that he "thought [Thomas] had a weapon at that point right there," that he was in fear of his life when he fired the first shot, that Thomas "launched toward" him after the first shot so he "backed up and continued shooting." He also testified about a previous incident with Thomas at a nightclub where Thomas worked that occurred sometime between 2010 and 2011. He testified that on that occasion, Thomas "came up to [him] from behind, grabbed [him] around [his] neck and slammed [him] on the ground." He also testified that he knew Thomas was a "violent person" and that he had heard of Thomas's past aggressive acts, including that he "put a guy['s] head through a wall," "slammed this other girl and hit her head on the bar," and "choked a friend of mine out and slammed him throughout the club."

The State's rebuttal evidence included video recordings from patrol car cameras that captured appellant speaking with police officers shortly after the shooting. On the recordings, appellant initially told the officers that his name was Ferlandus and that he was coming from a girl's house "around the corner" but later stated that he was coming from the club; that he had had an incident with Thomas "some years back" when Thomas, acting as a bouncer at a different club, "choked" and "slammed" him "on [the] floor"; that he saw Thomas at the club and "could not let it go until [Thomas] apologize[d]" about the prior incident; that Thomas told him "it's over" if Thomas went to his truck; and that Thomas "was not getting to [his] truck." He stated that Thomas was "real aggressive" and a "bully" and that he "only" was asking for an apology.

2

> The jury found appellant guilty, and the trial proceeded to the punishment phase. The defense theory during the punishment phase was that appellant caused the death of Thomas "under the immediate influence of sudden passion arising from an adequate cause." *See* TEX. PENAL CODE § 19.02(d) (explaining that offense of murder is second-degree felony if defendant proves that he caused death under immediate influence of sudden passion arising from adequate cause). After hearing additional evidence, the jury found that the offense was not committed under sudden passion arising from an adequate cause and assessed punishment at confinement for thirty years. *See id.* § 12.32 (stating punishment range for confinement of life or "not more than 99 years or less than 5 years" for first-degree felony).

*Jackson v. State*, No. 03-20-00085-CR, 2022 WL 257451 at *1-2 (Tex. App.--Austin, Jan. 28, 2022, pet. ref'd). Petitioner's conviction was affirmed on appeal. *Id.* Petitioner then filed a petition for discretionary review (PDR), which the Texas Court of Criminal Appeals (TCCA) refused on March 30, 2022. *Jackson v. State*, No. PD-0105-22 (Tex. Crim. App. Mar. 30, 2022). Petitioner did not file a petition for certiorari with the United States Supreme Court. (ECF No. 1 at 3.)

On March 20, 2023, Petitioner executed his state habeas corpus application, listing the following grounds of relief:

1. The trial court's improper discharge of a juror violated Petitioner's fundamental right to the proper functioning of the judicial process and denied him a fair and impartial trial.

2. The erroneous jury instructions regarding parole in the punishment phase violated Petitioner's right to due process.

3. The trial court violated Petitioner's right to present a meaningful defense when it excluded certain evidence.

4. Petitioner received ineffective assistance of trial counsel when counsel
    a. failed to hire an expert pathologist;
    b. failed to obtain evidence showing the victim possessed a firearm on August 18, 2018;
    c. failed to adequately develop the defensive theory that CPR administrators caused the victim's trauma;
    d. failed to have Petitioner undergo psychiatric testing for PTSD and other mental health disorders;
    e. failed to introduce exculpatory evidence and impeach testimony;
    f. failed to object to the State's prejudicial closing argument;

    g. illegally had a second attorney appointed by the State;
    h. failed to object to illegal jury charge during punishment phase;
    i. failed to explore theory that victim cocked his finger like a gun;
    j. failed to subpoena Kerr Police Department detective to admit evidence of the victim's unprovoked assault of someone resulting in a broken ankle and punches to the head and face.

5. Petitioner's appellate counsel provided ineffective assistance of counsel.

6. The prosecutor committed reversable error by misstating material evidence and making inflammatory remarks to the jury.

7. No evidence supports the verdict.

8. The prosecutor withheld exculpatory evidence.

9. The court of appeals applied unreasonable and contrary standards when analyzing Petitioner's erroneous jury-charge claim.

(ECF No. 17-30 at 51-74.) On May 22, 2024, the TCCA denied Petitioner's state habeas application without written order on the findings of the trial court and on the court's independent review of the record. *Ex parte Jackson*, No. WR-95,530-01 (Tex. Crim. App. May 8, 2024). (ECF No. 17-36.)

    On September 2, 2024, Petitioner executed his federal habeas petition, listing the following grounds of relief:

1. The trial court violated Petitioner's constitutional rights when it discharged a juror, denied his motion for a mistrial, and allowed him to be convicted by an eleven-person jury.

2. The trial court erred when it excluded evidence of the victim's violent character.

3. Petitioner's rights were violated when the trial court submitted an erroneous jury charge regarding Petitioner's eligibility for parole.

4. Petitioner's trial counsel provided ineffective assistance of counsel when counsel
    a. sat through trial doodling on a piece of paper;
    b. only cross-examined three of the State's witnesses;
    c. admitted the case was difficult but did not inform Petitioner of this, thus not allowing Petitioner to find new counsel;
    d. failed to seek a lesser-included offense of voluntary manslaughter;
    e. failed to communicate plea bargain to Petitioner; and

      f.   failed to seek a mistrial for an eleven-person jury trial

(ECF Nos. 1, 2.) Respondent Guerrero argues claims 1-3 are meritless and claim 4 is procedurally defaulted from federal habeas review. (ECF No. 24.) In response, Petitioner restates his arguments regarding claims 1-3 and argues claim 4 should not be procedurally defaulted because his appellate counsel told him to wait to bring ineffective assistance claims in a writ for habeas corpus relief. (ECF No. 17.)

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S.

at 102. A petitioner must show that the state court's decision was objectively unreasonable, not just incorrect, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

1. Procedural Default (claim 4)

In claim 4 Petitioner argues his trial counsel provided ineffective assistance when he was doodling during trial, only cross-examined three of the State's witnesses, admitted in his state habeas affidavit that Petitioner's case was difficult, failed to seek a lesser-included offense, failed to communicate a plea bargain offer to Petitioner, and failed to seek a mistrial after a juror was excused. Respondent argues these claims are procedurally defaulted from federal habeas review. Respondent is correct.

Before seeking review in federal court, a habeas petitioner must first present his claims in state court and exhaust all available state court remedies through a proper adjudication on the merits. *See* 28 U.S.C. § 2254(b)(1)(A) (federal habeas relief may not be granted unless it appears petitioner exhausted remedies available in the state courts). The exhaustion requirement is

satisfied if the substance of the federal habeas claim was presented to the highest state court in a procedurally proper manner. *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002). In Texas, this exhaustion requirement is generally satisfied if the substance of the claim was presented to the TCCA in a procedurally proper manner either through a PDR or through a state application for writ of habeas corpus. *See Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).

If a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred'", then a petitioner's claim is procedurally defaulted from federal habeas review. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). The only way for a petitioner to overcome a procedural default is either to show cause for the default and resulting prejudice or to demonstrate the federal court's failure to consider the claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51 (1991); *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004).

While Petitioner raised claims of ineffective assistance of trial counsel in his state habeas application, the arguments from his state habeas application are distinct from those in his federal habeas application. The Court concludes that Petitioner has not fairly presented the substance of his federal ineffective-assistance claims to the state courts either through a PDR or through a state application for writ of habeas corpus.

Should this Court require Petitioner to return to state court to satisfy the exhaustion requirement, the TCCA would find the claims procedurally barred under the abuse of the writ doctrine found in Article 11.07 § 4 of the Texas Code of Criminal Procedure. Texas does not permit successive habeas corpus applications except in two circumstances: (1) the current claims

could not have been previously presented in the original application because the legal or factual basis for the claims were unavailable when the application filed his original application or (2) by a preponderance of the evidence, no rational juror could have found the application guilty beyond a reasonable doubt but for a violation of the United States Constitution. Neither of these exceptions apply to Petitioner's ineffective-assistance claims. Therefore, because the TCCA would bar these claims if Petitioner returned to state court to exhaust them, they are procedurally defaulted from federal review. S*ee Bagwell v. Dretke*, 372 F.3d 748, 755-56 (5th Cir. 2004) (holding a petitioner procedurally defaulted a claim by failing to "fairly present" it to the state courts in his state habeas corpus application); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002) (holding unexhausted claims were procedurally barred).

To overcome procedural default, Petitioner must either show cause for the default and resulting prejudice or demonstrate the Court's failure to consider the claim would result in a fundamental miscarriage of justice. In his response, Petitioner argues his appellate counsel advised him that ineffective-assistance claims were best raised in a post-conviction writ of habeas corpus, and he followed his counsel's advice because he is ignorant of the law. (ECF No. 18.)

"To establish cause, [a petitioner] must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Shinn v. Ramirez*, 596 U.S. 366, 379 (2022) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Petitioner's circumstances do not establish cause for the default: no external factor impeded his ability to comply with the state procedural rule. Petitioner brought a variety of ineffective-assistance claims in his state habeas application, just not the ones he brings in his federal petition. As a result, he cannot show cause and actual prejudice to overcome the default.

Petitioner also does not show that the Court's failure to address this claim would result in a fundamental miscarriage of justice. "The fundamental miscarriage of justice exception is confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). Petitioner does not argue he is actually innocent of his crime of conviction. As a result, Petitioner's ineffective-assistance claim is procedurally defaulted from federal habeas review and is dismissed.

2. Trial Court Error (claims 1-3)

Petitioner's final three claims all involve trial court error: (1) the trial court erred in dismissing a juror, not granting Petitioner a mistrial, and allowing Petitioner to be convicted by an eleven-person jury; (2) the trial court erred when it excluded evidence of the victim's character; and (3) the trial court erred when the jury charge contained erroneous information regarding Petitioner's parole eligibility.

Petitioner raised these claims in his state habeas application; however, when the state habeas court issued its findings of facts and conclusions of law, it concluded these claims had been previously litigated in Petitioner's direct appeal and could not be relitigated in Petitioner's habeas application barring new evidence, which Petitioner did not have. (ECF No. 17-34 at 13.) Generally, when reviewing a claim under the AEDPA's deferential standard, a federal court must look to the last reasoned state judgment that considered and rejected Petitioner's claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). As such, the Court will look to the intermediate state court of appeals's decision in reviewing these claims.

   a. *Juror Dismissal (claim 1)*

Petitioner argues that the trial court erred when it dismissed a juror, did not grant Petitioner a mistrial based on the dismissed juror, and then allowed Petitioner to be convicted by an eleven-person jury. Respondent argues this claim should be denied because it does not show a violation of Petitioner's rights under the United States Constitution or federal law.

In Petitioner's direct appeal, the state appellate court overruled this point of error. The court concluded the trial court did not abuse its discretion in discharging the juror because it had determined the juror could not be fair based on her connection with a former mentor who was friendly with some of the State's witnesses. The appellate court further concluded the trial court did not err in denying Petitioner's motion for a mistrial because, after discharging a juror based on disability, Texas state law required the trial court to proceed with the eleven remaining jurors. *Jackson*, 2022 WL 257451 at *3-4.

While the Sixth Amendment to the U.S. Constitutions guarantees a person's right to a jury trial for criminal cases, it does not prescribe the exact size of jury the state must provide. *See Mills v. Collins*, 924 F.2d 89, 91 (1991). The Supreme Court has interpreted the Sixth Amendment as being satisfied with a jury of less than twelve but violated if a jury has less than six people. *Id.* As a result, Petitioner's eleven-person jury does not violate his Sixth Amendment rights or any other federal laws.

Petitioner's claim that the trial court erred in dismissing the juror as disabled and then denying his motion for a mistrial are all based on Texas state law. As a federal court sitting in habeas, this Court "cannot review the correctness of the state habeas court's interpretation of state law." *Young v. Dretke*, 356 F.3d 616, 618 (5th Cir. 2004); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law ... binds a

federal court sitting in habeas corpus."); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."); *Gibbs v. Johnson*, 154 F.3d 253, 259 (5th Cir.1998) ("As a federal court in a habeas review of a state court conviction, we cannot review state rulings on state law."). This Court cannot review the correctness of the state habeas court's interpretation of state law, and Petitioner does not have a constitutional right to a twelve-person jury. As a result, Petitioner has not shown that the state habeas court's denial of this claim was objectively unreasonable, and it is denied.

    b. *Excluded Evidence (claim 2)*

Petitioner next claims the trial court erred when it excluded evidence of the victim's misdemeanor charges, which Petitioner alleges showed the victim had a pattern of violent behavior. Petitioner argues the exclusion of this evidence violated his right to mount a complete defense against the charges.

The state appellate court denied this claim. The court noted the evidence Petitioner sought to admit were certified copies of charges against the victim for an April 2016 misdemeanor assault offense and another document related to that charge. In denying this claim, the state appellate court concluded the evidence was not admissible under Texas evidentiary rules and that Petitioner was able to present character evidence against the victim though his testimony. *Jackson*, 2022 WL 257451, at *5-6.

It is well-settled in the Fifth Circuit that a federal court "[does] not sit as super state supreme court to review error under state law." *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988). It is thus not the role of a federal habeas court to reexamine state court determinations on questions such as the admissibility of evidence under state procedural rules. *Estelle,* 502 U.S. at 67-68; *Goodrum v. Quarterman*, 547 F.3d 249, 261 (5th Cir. 2008). A federal court may only grant

11

habeas relief based on an erroneous state court evidentiary ruling if the ruling also violates a specific federal constitutional right or renders a petitioner's trial fundamentally unfair. *Pemberton v. Collins*, 991 F.2d 1218, 1226 (5th Cir. 1993). The challenged evidence must be a crucial, critical, or highly significant factor in the context of the entire case. *Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011). An error makes a trial "fundamentally unfair" if there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Brown v. Dretke*, 419 F.3d 365, 377 (5th Cir. 2005).

As the appellate court noted and the record shows, Petitioner was able to testify to the victim's allegedly violent behavior at trial. It is unclear what impact the certified misdemeanor charges would have had on the jury, and Petitioner has failed to show that this evidence was crucial, critical, or highly significant in the context of the entire case. Accordingly, the state habeas court's denial of this claim was not objectively unreasonable, and it is denied.

  c. *Improper Jury Instruction (claim 3)*

In Petitioner's final claim, he argues the trial court erred in submitting an erroneous charge to the jury during sentencing. The jury charge incorrectly stated that Petitioner would be eligible for parole when his time served and good time equaled one-half of his sentence; in fact, because Petitioner was convicted of first-degree murder, his good time credits are not considered for his parole eligibility. Petitioner argues this error deprived him of a fair trial.

The state appellate court agreed with Petitioner that the instructions were erroneous but concluded the error did not egregiously harm Petitioner. The appellate court reasoned that the jury charge also included curative instructions regarding Petitioner's eligibility for parole such as "eligibility for parole does not guarantee that parole will be granted" and also instructed the jurors not to consider "the extent to which good conduct time may be awarded to or forfeited by this

12

particular defendant" or "the manner in which the parole law may be applied to this particular defendant." Further, the jury did not send notes to the trial court regarding parole or its effect on Petitioner's length of incarceration, and there was no jury misconduct or other evidence suggesting the jury did not follow the trial court's instructions. The appellate court also noted that Petitioner's sentence of thirty years imprisonment was at the bottom end of the punishment range for a first-degree felony. *Jackson*, 2022 WL 257451, at *6-8.

Claims of improper jury instruction or rejection of a requested jury instruction in state criminal trials do not generally form the basis for federal habeas relief. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (citing *Estelle*, 502 U.S. at 71-72 (federal habeas courts do not grant relief solely on the basis of an improper jury charge)). The relevant inquiry is whether the failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Id*. 764-65 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (it is not enough for the instruction to be "undesirable, erroneous, or even universally condemned"; rather, it must have violated some constitutional right).

Petitioner has not met this burden. Although the jury instruction regarding parole was erroneous, there were other curative instructions in the charge, and Petitioner's sentence of thirty years imprisonment is at the lower end of the punishment range. Petitioner fails to show the erroneous instruction infected the entire trial, violating his rights to due process rights. As a result, the state habeas court's rejection of this claim was not objectively unreasonable, and it is denied.

## IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule

11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is finally **ORDERED** that the Court shall not issue a certificate of appealability.

**SIGNED** this 17th day of April, 2025.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE